LISTING CONTRACT (SELLER AGENCY CONTRACT)     XLS
EXCLUSIVE RIGHT TO SELL REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1 Broker (Company) **Century 21 Smith Hourigan Group** | Licensee(s) (Name) **David P. Hourigan**
2
3 Company Address **69 N. Mountain Blvd, Mountaintop, PA** | Direct Phone(s) **(570) 715-7750**
4 **18707** | Cell Phone(s) ____
5 Company Phone **(570) 474-6307** | Fax **(570) 474-9663**
6 Company Fax **(570) 474-9663** | Email **David P. Hourigan**
7 SELLER **Robert P. Sheils Chapter 7, Trustee for the Bankruptcy, Estate of Mark A. Gonsky**
8
9 SELLER'S MAILING ADDRESS ____
10
11 PHONE **(570) 587-6200** FAX ____
12 E-MAIL ____
13 Seller understands that this Listing Contract is between Broker and Seller.
14 Does Seller have a listing contract for this Property with another broker? ☐ Yes ☒ No
15 If yes, explain: ____
16 1. **PROPERTY**                                   LISTED PRICE $ ____
17    Address **59 Loop Road**                **Mountaintop**       PA   ZIP **18707**
18    Municipality (city, borough, township) **Fairview**
19    County **Luzerne**                              School District **Crestwood**
20    Zoning **Residential**
21    Present Use ____
22    Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date) **L1081003006**
23    **DB2512/PG242**
24 2. **STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
25    (A) No Association of Realtors® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed
26        and agreed upon the term of this Contract.
27    (B) Starting Date: This Contract starts when signed by Broker and Seller, unless otherwise stated here: ____
28    (C) Ending Date: This Contract ends at 11:59 PM on **03/01/2017**. By law, the term of a listing contract may not
29        exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is au-
30        tomatically 364 days from the Starting Date of this Contract.
31 3. **DUAL AGENCY**
32    Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a
33    Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer
34    and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for
35    a buyer and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that
36    Broker is a Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.
37 4. **DESIGNATED AGENCY**
38    Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the inter-
39    ests of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40    ☒ Designated Agency is not applicable.
41 5. **BROKER'S FEE**
42    (A) No Association of Realtors® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43        will pay Broker.
44    (B) Broker's Fee is **6.000** % of the sale price OR $ ____, whichever is greater, AND $ ____,
45        paid to Broker by Seller as follows:
46        1. $ ____ of Broker's Fee is earned and due (non-refundable) at signing of this Listing Contract, payable
47           to Broker.

48 Broker/Licensee Initials: ____           XLS Page 1 of 6          Seller Initials: ____

Pennsylvania Association of Realtors®                          COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2011
                                                                                                              04/14

CENTURY 21 Smith Hourigan Group - Mountaintop, 69 North Mountain Blvd. Mountaintop, PA 18707
Phone: 570-715-7750      Fax: 570-474-9663      David P. Hourigan                                             Gonsky House
                  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

2. Seller will pay the balance of Broker's Fee if:
   a. Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR
   b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR
   c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
   d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
   e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay from any money paid by the government, OR
   f. A sale occurs after the Ending Date of this Contract IF:
      (1) The sale occurs within _____90_____ of the Ending Date, AND
      (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
      (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
   (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

6. **BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
   If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker _____0_____ of/from deposit monies.

7. **COOPERATION WITH OTHER BROKERS**
   Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay from Broker's Fee a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
   (A) ☐ Represents Seller (SUBAGENT). Broker will pay _____ of/from the sale price.
   (B) ☒ Represents the buyer (BUYER'S AGENT). Broker will pay _____3%_____ of/from the sale price.
   A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
   (C) ☐ Does not represent either Seller or a buyer (TRANSACTION LICENSEE).
   Broker will pay _____ of/from the sale price.

8. **DUTIES OF BROKER AND SELLER**
   (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.
   (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
   (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.
   (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
   (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Broker's written consent.

9. **BROKER'S SERVICE TO BUYER**
   Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

10. **BROKER NOT RESPONSIBLE FOR DAMAGES**
    Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

11. **DEPOSIT MONEY**
    (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.
    (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
       1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

Broker/Licensee Initials: _____      XLS Page 2 of 6      Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Gonsky House

107     2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, direct-
108        ing Broker how to distribute some or all of the deposit monies.
109     3. According to the terms of a final order of court.
110     4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
111        deposit monies if there is a dispute between the parties that is not resolved.
112   (C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and
113     costs of the Broker(s) and licensee(s) will be paid by Seller.

114 **12. OTHER PROPERTIES**
115   Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

116 **13. ADDITIONAL OFFERS**
117   Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property,
118   Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by an-
119   other Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO
120   AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

121 **14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS**
122   (A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or en-
123     vironmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
124     1. is a possible danger to those living on the Property, or
125     2. has a significant, adverse effect on the value of the Property.
126     The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a struc-
127     tural element, system or subsystem is not by itself a material defect.
128   (B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
129   (C) If Seller fails to disclose known material defects and/or environmental hazards:
130     1. Seller will not hold Broker or Licensee(s) responsible in any way;
131     2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
132     3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or
133        settlements (money Broker or Licensee pays to end a lawsuit or claim).

134 **15. IF PROPERTY WAS BUILT BEFORE 1978**
135   The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an
136   EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller
137   knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how
138   the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based
139   paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based
140   paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has
141   or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other
142   dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a
143   different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based
144   paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If
145   the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does
146   not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to hous-
147   ing built in 1978 or later.

148 **16. HOME WARRANTIES**
149   At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a
150   home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing de-
151   fects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that
152   Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a
153   business relationship with the home warranty company that provides a financial benefit to Broker.

154 **17. RECOVERY FUND**
155   Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment)
156   against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund re-
157   pays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the
158   Fund, call (717) 783-3658, or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

159 **18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA**
160   Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED,
161   SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORI-
162   GIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCI-
163   ATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan
164   money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

165 Broker/Licensee Initials: _____      XLS Page 3 of 6      Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Gonsky House

166 **19. TRANSFER OF THIS CONTRACT**
167     (A) Seller agrees that Broker may transfer this Contract to another broker when:
168         1. Broker stops doing business, OR
169         2. Broker forms a new real estate business, OR
170         3. Broker joins his business with another.
171     (B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all re-
172         quirements of this Contract with the new broker.
173 **20. NO OTHER CONTRACTS**
174     Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before
175     the Ending Date of this Contract.
176 **21. CONFLICT OF INTEREST**
177     It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's inter-
178     ests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.
179 **22. ENTIRE CONTRACT**
180     This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not
181     a part of this Contract.
182 **23. CHANGES TO THIS CONTRACT**
183     All changes to this Contract must be in writing and signed by Broker and Seller.
184 **24. MARKETING OF PROPERTY**
185     (A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all
186         media, including print and electronic, photographs and videos, unless otherwise stated here: _____
187     _____
188         1. ☐ Seller does not want the listed Property to be displayed on the Internet.
189            ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
190         2. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct
191            searches for listings on the Internet will not see information about the listed Property in response to their search.
192     (B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Inter-
193         net in connection to the open house.
194     (C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as
195         "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the
196         right to control some elements of how their property is displayed on a VOW and/or IDX websites.
197     Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
198         ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with
199            Seller's listing.
200         ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with
201            the Seller's listing.
202     (D) Multiple Listing Services (MLS)
203         ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.
204         ☒ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons.
205         Listing broker shall communicate to the MLS all of Seller's elections made above.
206     (E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.
207     (F) Other _____
208 **25. PUBLICATION OF SALE PRICE**
209     Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of
210     the Property.
211 **26. COPYRIGHT**
212     In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, world-wide
213     license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by
214     Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings,
215     virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to
216     submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise
217     distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with
218     the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants
219     Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the Li-
220     cense granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller
221     understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

222 Broker/Licensee Initials: _____      XLS Page 4 of 6      Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com      Gonsky House

## 27. FIXTURES AND PERSONAL PROPERTY

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, (including rods and brackets), shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included: _____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

## 28. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____

(B) Yearly Property Taxes $ 5,590.00     Property Assessed Value $ 344,400.00

(C) Is the property preferentially assessed (including a tax abatement)?  ☐ Yes  ☐ No
    If applicable, how many years remain? _____

(D) COA/HOA Name _____  COA/HOA Phone _____
    COA/HOA special assessments $ _____  Buyer's required capital contribution $ _____
    Please explain: _____

(E) Municipality Assessments $ _____

(F) COA/HOA Fees $ _____  ☐ Quarterly  ☐ Monthly  ☐ Yearly

## 29. TITLE & POSSESSION

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
    ☐ Oil  ☐ Gas  ☐ Mineral  ☐ Other
    If checked, please explain: _____

(C) Seller has:
    ☐ First mortgage with _____  Amount of balance $ _____
      Address _____
      Phone _____  Acct. # _____
    ☐ Second mortgage with _____  Amount of balance $ _____
      Address _____
      Phone _____  Acct. # _____
    ☐ Home Equity line of credit with _____  Amount of balance $ _____
      Address _____
      Phone _____  Acct. # _____
    ☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) Seller has:
    ☐ Judgments $ _____            ☐ Past Due Municipal Assessment $ _____
    ☐ Past Due Property Taxes $ _____  ☐ Past Due COA/HOA Fees $ _____
    ☐ Federal Tax Liens $ _____      ☐ Past Due COA/HOA Assessments $ _____
    ☐ State Tax Liens $ _____
    ☐ Other: _____  $ _____

(E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

## 30. BUYER FINANCING
Seller will accept the following arrangements for buyer to pay for the Property:
☒ Cash  ☒ Conventional mortgage  ☐ FHA mortgage  ☐ VA mortgage
☐ Seller's Assist to buyer (if any) $ _____, or _____ %

Broker/Licensee Initials: _____  XLS Page 5 of 6  Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Gonsky House

280 **31. SPECIAL INSTRUCTIONS**
281 The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any spe-
282 cial conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.
283 **32. SPECIAL CLAUSES**
284     (A) The following are part of this Listing Contract if checked:
285         ☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
286         ☐ Single Agency Addendum (PAR FormSA)
287         ☐ Consumer Services Fee Addendum (PAR Form CSF)
288         ☒ Vacant Land Addendum to Listing Contract (PAR Form VLA)
289         ☐ Short Sale Addendum (PAR Form SSL)
290         ☐ _____
291         ☐ _____
292     (B) Additional Terms:

306 ____/____ Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
307 ____/____ Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in
308         a timely manner, if required.
309 ____/____ Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Bro-
310         ker in a timely manner, if required.

311 Seller has read the entire Contract before signing. Seller must sign this Contract.

312 Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es)
313 listed.

314 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
315 of all parties, constitutes acceptance by the parties.

316 This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which coun-
317 terparts together shall constitute one and the same Agreement of the Parties.

318 **NOTICE BEFORE SIGNING:** IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYL-
319 VANIA REAL ESTATE ATTORNEY.

320 SELLER _[signed]_    DATE 8/31/16
      Robert P. Sheils Chapter 7
321 SELLER _____ DATE _____
      Trustee for the Bankruptcy
322 SELLER _____ DATE _____
      Estate of Mark A. Gonsky

323 BROKER (Company Name) **Century 21 Smith Hourigan Group**

324 ACCEPTED ON BEHALF OF BROKER BY _[signed]_ DATE 8/31/16
      David P. Hourigan

XLS Page 6 of 6
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com      Gonsky Land

Case 5:15-bk-03375-JJT    Doc 50    Filed 09/02/16    Entered 09/02/16 09:42:19    Desc
Main Document     Page 6 of 13

# VACANT LAND ADDENDUM TO LISTING CONTRACT     VLA

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

1 BROKER (Company) __Century 21 Smith Hourigan Group__
2 LICENSEE(S) __David P. Hourigan__
3 SELLER __Robert P. Sheils Chapter 7, Trustee for the Bannkruptcy__
4 PROPERTY __Route 437/Honey Hole Road, White Haven, PA 18661__
5 DATE OF LISTING CONTRACT _____

6 **1. ADDITIONAL PROPERTY INFORMATION**
7   A. Seller represents that the following utility connections are available and located as follows (list name of service provider):
8      [X] Electric      Location/Provider __PPL__
9      [ ] Gas           Location/Provider _____
10     [X] Telephone     Location/Provider __Verizon__
11     [ ] Water         Type: [ ] Public [ ] On-site (well) [ ] Community [ ] Other_____
12     Provider/Location _____
13     [ ] Sewer         Type: [ ] Public [ ] On-site septic [ ] Community [ ] Other_____
14     Provider/Location _____
15     Has an on-site system been approved?        [ ] Yes [ ] No   Has a percolation test been performed?  [ ] Yes [ ] No
16     If yes, was the percolation rate approved?  [ ] Yes [ ] No   Are plans for septic design available?   [ ] Yes [ ] No
17     [ ] Other_____
18   B. If applicable, is the subdivision complete? [ ] Yes [ ] No  If yes, are plans available?              [ ] Yes [ ] No

19 **2. ADDITIONAL DUTIES OF SELLER**
20   A. Within _____ days of the Starting Date of the Listing Contract, Seller will provide to Broker copies of inspection reports,
21      environmental surveys, available title reports, boundary surveys, and existing notes and mortgages that may continue to
22      affect the Property after settlement.
23   B. Seller will not permit any real estate signs, other than those belonging to Broker, to be placed on the Property during the
24      term of the Listing Contract.

25 **3. LAND USE RESTRICTIONS OTHER THAN ZONING**
26   A. If checked below, the Property, or a portion of it, is preferentially assessed for tax purposes or has limited developments
27      rights under the following Act(s):
28      [ ] Farmland and Forest Land Assessment Act - Act 319 of 1974, 72 P.S. §5490.1 et seq. (Clean and Green Program)
29      [ ] Open Space Act - Act 515 of 1965, 16 P.S. §11941 et seq. (an Act enabling certain counties of the Common-
30         wealth to covenant with land owners for preservation of land in farm, forest, water supply, or open space uses)
31      [ ] Agricultural Area Security Law - Act 43 of 1981, 3 P.S. §901 et seq. (Development Rights)
32      [ ] Other_____
33   B. Seller is aware that the buyer of the Property will need to determine the tax implications that will or may result from the
34      sale of the Property to the buyer or that may result in the future as a result in any change in use of the Property
35   C. If Property is enrolled in the Clean and Green Program, Seller must submit notice of the sale and any proposed changes in
36      the use of Seller's remaining enrolled Property to the County Assessor 30 days before the transfer of title to the buyer.

37 **4. ADDITIONAL DISCLOSURES**
38 In addition to disclosure listed on a separate statement, Seller has knowledge of the following conditions affecting the Property:
39 [ ] Contamination by one or more substances that requires remediation;
40 [ ] The presence of wetlands, flood plains, or any other environmentally sensitive areas, whose development is limited or
41    prevented by law;
42 [ ] The presence of one or more substances whose removal or disposal is subject to any law or regulation;
43 [ ] Violations of any law or regulation caused by the handling or disposing of any material waste or the discharge of any
44    material into the soil, air, surface water, or ground water;
45 [ ] The presence of underground fuel or liquid storage tanks.
46 Explain any items checked above: _____
47 _____
48 All other terms and conditions of the Listing Contract remain unchanged and in full force and effect.

49 SELLER _____[signature]_____ Robert P. Sheils Chapter 7 DATE 8/31/16
50 SELLER _____                Trustee for the Bannkruptcy DATE _____
51 SELLER _____                Estate of Mark A. Gonsky DATE _____

52 BROKER (Company Name) Century 21 Smith Hourigan Group
53 ACCEPTED BY __[signature]__ David P. Hourigan DATE 8/31/16

Pennsylvania Association of REALTORS®     COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2003
                                          11/03

CENTURY 21 Smith Hourigan Group - Mountaintop, 69 North Mountain Blvd Mountaintop, PA 18707    Phone: 570-715-7150    Fax: 570-474-9663    Gonsky Land
David P Hourigan                 Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

LISTING CONTRACT (SELLER AGENCY CONTRACT)  XLS
EXCLUSIVE RIGHT TO SELL REAL ESTATE
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1  Broker (Company) <u>Century 21 Smith Hourigan Group</u> | Licensee(s) (Name) <u>David P. Hourigan</u>
2
3  Company Address <u>69 N. Mountain Blvd., Mountaintop, PA</u> | Direct Phone(s) <u>(570) 715-7750</u>
4  <u>18707</u> | Cell Phone(s)
5  Company Phone <u>(570) 474-6307</u> | Fax <u>(570) 474-9663</u>
6  Company Fax <u>(570) 474-9663</u> | Email <u>hourigan@aol.com</u>
7  SELLER <u>Robert P. Sheils Chapter 7, Trustee for the Bankruptcy Estate of Mark A. Gonsky</u>
8
9  SELLER'S MAILING ADDRESS
10
11 PHONE <u>(570) 587-2600</u> FAX
12 E-MAIL

13 Seller understands that this Listing Contract is between Broker and Seller.
14 Does Seller have a listing contract for this Property with another broker? ☐ Yes ☒ No
15 If yes, explain:

16 1. PROPERTY                                                    LISTED PRICE $
17   Address <u>Route 437/Honey Hole Road</u>        <u>White Haven</u>    PA ZIP <u>18661</u>
18   Municipality (city, borough, township) <u>Dennison Township</u>
19   County <u>Luzerne</u>                         School District <u>Crestwood</u>
20   Zoning <u>Residential</u>
21   Present Use
22   Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date) <u>N1000A06B</u>
23   <u>DB307/PG288248</u>
24 2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")
25   (A) No Association of Realtors® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed
26       and agreed upon the term of this Contract.
27   (B) Starting Date: This Contract starts when signed by Broker and Seller, unless otherwise stated here:
28   (C) Ending Date: This Contract ends at 11:59 PM on <u>03/01/2017</u>. By law, the term of a listing contract may not
29       exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is au-
30       tomatically 364 days from the Starting Date of this Contract.
31 3. DUAL AGENCY
32   Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a
33   Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer
34   and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for
35   a buyer and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that
36   Broker is a Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.
37 4. DESIGNATED AGENCY
38   Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the inter-
39   ests of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40   ☒ Designated Agency is not applicable.
41 5. BROKER'S FEE
42   (A) No Association of Realtors® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43       will pay Broker.
44   (B) Broker's Fee is <u>6.000</u> % of the sale price OR $ _____, whichever is greater, AND $ _____.
45       paid to Broker by Seller as follows:
46       1. $ _____ of Broker's Fee is earned and due (non-refundable) at signing of this Listing Contract, payable
47          to Broker.

48 Broker/Licensee Initials: _____        XLS Page 1 of 6        Seller Initials: _____

Pennsylvania Association of Realtors®                COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2011
                                                                                              04/14

CENTURY 21 Smith Hourigan Group - Mountaintop, 69 North Mountain Blvd. Mountaintop, PA 18707
Phone: 570-715-7750    Fax: 570-474-9663    David P. Hourigan                             Gonsky Land
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

49  2. Seller will pay the balance of Broker's Fee if:
50      a. Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR
52      b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR
55      c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
56      d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
58      e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay from any money paid by the government, OR
60      f. A sale occurs after the Ending Date of this Contract IF:
61          (1) The sale occurs within _____ 90 _____ of the Ending Date, AND
62          (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
63          (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
64  (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

66 **6. BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
67  If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker
68  _____ 0 _____ of/from deposit monies.

69 **7. COOPERATION WITH OTHER BROKERS**
70  Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay from Broker's Fee a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
72  (A) ☐ Represents Seller (SUBAGENT). Broker will pay _____ of/from the sale price.
73  (B) ☒ Represents the buyer (BUYER'S AGENT). Broker will pay _____ 3% _____ of/from the sale price.
74      A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
75  (C) ☐ Does not represent either Seller or a buyer (TRANSACTION LICENSEE).
76      Broker will pay _____ of/from the sale price.

77 **8. DUTIES OF BROKER AND SELLER**
78  (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.
80  (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
81  (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.
84  (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
86  (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Broker's written consent.

88 **9. BROKER'S SERVICE TO BUYER**
89  Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

92 **10. BROKER NOT RESPONSIBLE FOR DAMAGES**
93  Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

95 **11. DEPOSIT MONEY**
96  (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.
102  (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
104      1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

106 Broker/Licensee Initials: _____    XLS Page 2 of 6    Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Gonsky Land

Case 5:15-bk-03375-JJT    Doc 50    Filed 09/02/16    Entered 09/02/16 09:42:19    Desc
Main Document    Page 9 of 13

107       2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, direct-
108           ing Broker how to distribute some or all of the deposit monies.
109       3. According to the terms of a final order of court.
110       4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
111           deposit monies if there is a dispute between the parties that is not resolved.
112    (C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and
113       costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES

115 Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS

117 Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property,
118 Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by an-
119 other Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO
120 AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS

122   (A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or en-
123       vironmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
124       1. is a possible danger to those living on the Property, or
125       2. has a significant, adverse effect on the value of the Property.
126       The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a struc-
127       tural element, system or subsystem is not by itself a material defect.
128   (B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
129   (C) If Seller fails to disclose known material defects and/or environmental hazards:
130       1. Seller will not hold Broker or Licensee(s) responsible in any way;
131       2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
132       3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or
133       settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978

135 The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an
136 EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller
137 knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how
138 the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based
139 paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based
140 paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has
141 or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other
142 dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a
143 different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based
144 paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If
145 the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does
146 not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to hous-
147 ing built in 1978 or later.

## 16. HOME WARRANTIES

149 At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a
150 home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing de-
151 fects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that
152 Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a
153 business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECOVERY FUND

155 Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment)
156 against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund re-
157 pays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the
158 Fund, call (717) 783-3658, or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

## 18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA

160 Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED,
161 SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORI-
162 GIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCI-
163 ATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan
164 money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

165 Broker/Licensee Initials: _____     XLS Page 3 of 6     Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Gonsky Land

166 **19. TRANSFER OF THIS CONTRACT**
167    (A) Seller agrees that Broker may transfer this Contract to another broker when:
168       1. Broker stops doing business, OR
169       2. Broker forms a new real estate business, OR
170       3. Broker joins his business with another.
171    (B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all re-
172       quirements of this Contract with the new broker.
173 **20. NO OTHER CONTRACTS**
174    Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before
175    the Ending Date of this Contract.
176 **21. CONFLICT OF INTEREST**
177    It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's inter-
178    ests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.
179 **22. ENTIRE CONTRACT**
180    This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not
181    a part of this Contract.
182 **23. CHANGES TO THIS CONTRACT**
183    All changes to this Contract must be in writing and signed by Broker and Seller.
184 **24. MARKETING OF PROPERTY**
185    (A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all
186       media, including print and electronic, photographs and videos, unless otherwise stated here: _____
187       _____
188       1. ☐ Seller does not want the listed Property to be displayed on the Internet.
189          ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
190       2. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct
191          searches for listings on the Internet will not see information about the listed Property in response to their search.
192    (B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Inter-
193       net in connection to the open house.
194    (C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as
195       "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the
196       right to control some elements of how their property is displayed on a VOW and/or IDX websites.
197       Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
198       ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with
199          Seller's listing.
200       ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with
201          the Seller's listing.
202    (D) Multiple Listing Services (MLS)
203       ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.
204       ☐ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons.
205          Listing broker shall communicate to the MLS all of Seller's elections made above.
206    (E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.
207    (F) Other _____
208 **25. PUBLICATION OF SALE PRICE**
209    Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of
210    the Property.
211 **26. COPYRIGHT**
212    In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, world-wide
213    license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by
214    Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings,
215    virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to
216    submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise
217    distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with
218    the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants
219    Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the Li-
220    cense granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller
221    understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

222 Broker/Licensee Initials: _____    XLS Page 4 of 6    Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Gonsky Land

## 27. FIXTURES AND PERSONAL PROPERTY

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, (including rods and brackets), shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included: _____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

## 28. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____

(B) Yearly Property Taxes $ __423.00__          Property Assessed Value $ __26,500.00__

(C) Is the property preferentially assessed (including a tax abatement)?  ☐ Yes  ☐ No
   If applicable, how many years remain? _____

(D) COA/HOA Name _____ COA/HOA Phone _____
   COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
   Please explain: _____

(E) Municipality Assessments $ _____

(F) COA/HOA Fees $ _____ ☐ Quarterly  ☐ Monthly  ☐ Yearly

## 29. TITLE & POSSESSION

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
   ☐ Oil  ☐ Gas  ☐ Mineral  ☐ Other
   If checked, please explain: _____

(C) Seller has:
   ☐ First mortgage with _____ Amount of balance $ _____
      Address _____
      Phone _____ Acct. # _____
   ☐ Second mortgage with _____ Amount of balance $ _____
      Address _____
      Phone _____ Acct. # _____
   ☐ Home Equity line of credit with _____ Amount of balance $ _____
      Address _____
      Phone _____ Acct. # _____
   ☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) Seller has:
   ☐ Judgments $ _____      ☐ Past Due Municipal Assessment $ _____
   ☐ Past Due Property Taxes $ _____ ☐ Past Due COA/HOA Fees $ _____
   ☐ Federal Tax Liens $ _____ ☐ Past Due COA/HOA Assessments $ _____
   ☐ State Tax Liens $ _____
   ☐ Other: _____ $ _____

(E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

## 30. BUYER FINANCING  Seller will accept the following arrangements for buyer to pay for the Property:

☐ Cash          ☐ Conventional mortgage    ☐ FHA mortgage    ☐ VA mortgage
☐ Seller's Assist to buyer (if any) $ _____, or _____ %

Broker/Licensee Initials: _____    XLS Page 5 of 6    Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Gonsky Land

280 **31. SPECIAL INSTRUCTIONS**
281 The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any spe-
282 cial conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.
283 **32. SPECIAL CLAUSES**
284     (A) The following are part of this Listing Contract if checked:
285         ☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
286         ☐ Single Agency Addendum (PAR FormSA)
287         ☐ Consumer Services Fee Addendum (PAR Form CSF)
288         ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
289         ☐ Short Sale Addendum (PAR Form SSL)
290         ☐ _____
291         ☐ _____
292     (B) Additional Terms:

306 ____/____ Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
307 ____/____ Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in
308         a timely manner, if required.
309 ____/____ Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Bro-
310         ker in a timely manner, if required.

111 Seller has read the entire Contract before signing. Seller must sign this Contract.

112 Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es)
113 listed.

114 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
115 of all parties, constitutes acceptance by the parties.

116 This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which coun-
117 terparts together shall constitute one and the same Agreement of the Parties.

118 NOTICE BEFORE SIGNING; IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYL-
119 VANIA REAL ESTATE ATTORNEY.

20 SELLER _[signature]_ DATE 8/31/16
    Robert P. Sheils Chapter 7

21 SELLER _____ DATE _____
    Trustee for the Bankruptcy

22 SELLER _____ DATE _____
    Estate of Mark A. Gonsky

23 BROKER (Company Name) Century 21 Smith Hourigan Group

24     ACCEPTED ON BEHALF OF BROKER BY _[signature]_ DATE 8/31/16
    David P. Hourigan

XLS Page 6 of 6
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Gonsky House

Case 5:15-bk-03375-JJT    Doc 50    Filed 09/02/16    Entered 09/02/16 09:42:19    Desc
Main Document    Page 13 of 13